**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-956-7676
WWW.SULLCROM.COM

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*

NEW YORK • LOS ANGELES • PALO ALTO

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

April 17, 2026

Via ECF

Susan E. Bindler
Clerk of Court
U.S. Court of Appeals for the Eighth Circuit
Thomas F. Eagleton Courthouse
111 South 10th Street
St. Louis, Missouri 63102

> Re: *Minnesota Telecom Alliance, et al.* v. *FCC, et. al*, No. 24-1179 (and consolidated cases)

Dear Ms. Bindler:

I write to advise the Court of a recent decision by the Third Circuit in *Memphis Street Academy Charter School at J.P. Jones* v. *Philadelphia School District*, No. 25-2574, 2026 WL 934190 (3d Cir. Apr. 7, 2026). In that case, a charter school raised a claim under Article I, Section 29 of the Pennsylvania Constitution, which provides that "[e]quality of rights under the law shall not be denied or abridged . . . because of the race or ethnicity of the individual." The school maintained that the provision "protects against disparate impact without discriminatory intent." 2026 WL 934190, at *5.

The Third Circuit rejected that argument, reasoning that the "plain language of the provision undercuts" the school's position. 2026 WL 934190, at *5. The court explained that "the phrase 'because of,'" like the term "based on," "has been interpreted as requiring that the illegal action occurred on account of or due to a protected characteristic." *Id.* The court cited a number of federal statutes that likewise use the phrases "because of" or "based on" to require intentional discrimination. *Id.* And it referred to precedent from both the Supreme Court and other courts supporting that interpretation. The Third Circuit thus concluded that for this Pennsylvania provision, too, "a violation . . . cannot be proven by simply showing impact," but rather "must show that the actor acted because of the protected trait." *Id.*

That straightforward textual analysis applies with equal force here. Section 60506 authorizes the FCC to adopt rules "preventing digital discrimination of access *based on*" certain protected characteristics. Pub. L. No. 117-58, § 60506(b)(1), 135 Stat. 429, 1246 (emphasis added). As in *Memphis Street*, that language—"based on"—is a classic marker

of disparate-treatment regulation, not disparate-impact regulation.  *See* Industry Pet. Br. 24-26.  And as in *Memphis Street*, other language about "equality"—"equality of rights" under the Pennsylvania provision or "equal access" under Section 60506—does not suggest otherwise.

More than two years after its issuance, the FCC's digital-discrimination rule remains on the books.  We respectfully request that the Court hold unlawful and set aside that rule.

Respectfully submitted,


*/s/ Morgan L. Ratner*

Morgan L. Ratner


(Enclosure)

cc:     Counsel of Record (*via* ECF)

MEMPHIS STREET ACADEMY CHARTER SCHOOL AT..., Not Reported in Fed....

2026 WL 934190

**2026 WL 934190**
Only the Westlaw citation is currently available.
**NOT PRECEDENTIAL**
United States Court of Appeals, Third Circuit.

MEMPHIS STREET ACADEMY CHARTER
SCHOOL AT J.P. JONES, et al, Appellants
v.
PHILADELPHIA SCHOOL DISTRICT

No. 25-2574
|
Filed: April 7, 2026

Appeal from the United States District Court for the Eastern District of Pennsylvania

(D.C. No. 2:22-cv-02760)

District Judge: Honorable Chad F. Kenney

Submitted Under Third Circuit L.A.R. 34.1(a) March 2, 2026

Before: SHWARTZ, BIBAS, and PHIPPS, Circuit Judges.

OPINION[*]

SHWARTZ, Circuit Judge.

 **\*1**  Plaintiffs, Memphis Street Academy Charter School at J.P. Jones ("MSA"), together with seven parents and their minor children, brought claims against the School District of Philadelphia ("SDP") after SDP sought to close MSA pursuant to the surrender clause in its charter agreement. Plaintiffs appeal the District Court's orders granting SDP's motions to dismiss and for summary judgment and for denying their motion for reconsideration. For the reasons set forth herein, we will affirm.

I

A

In 2012, MSA received a charter (the "2012 Charter") to operate a Grade 5-8 charter school in Philadelphia for a five-year period.[1] MSA failed to achieve SDP's academic benchmarks during that period. In response, SDP's Charter Schools Office ("CSO") entered a new charter with MSA (the "2018 Charter") that included academic conditions for student attendance and proficiency rates under the Pennsylvania System of School Assessment ("PSSA"), a standardized test.[2] The 2018 Charter contained a "Surrender Clause," providing that "if any of the academic conditions ... are not met fully[,]" then MSA "will surrender and forfeit its charter and will close on or before June 30, 2022." App. 3210-11. The Surrender Clause specified that the CSO would decide whether the academic conditions were met "once data for [the] 2020-21 school year are available and made public." Id.

Under the 2018 Charter, MSA also agreed to participate in the Charter School Performance Framework (the "Framework"), which enables the CSO to annually evaluate the performance of all Philadelphia charter schools using three criteria (referred to by the CSO as "Domains"), including Academic Success. Under the Academic Success Domain, the CSO evaluates charter schools based on, among other things, student attendance and proficiency rates under the PSSA, by comparing charter schools to a Similar Schools Group ("SSG") made up of other charter schools with similar student demographics concerning poverty rates, special education, and English learners. The racial demographics of the charter schools are not considered in constructing the SSG.

Plaintiffs, however, have presented evidence of racial and ethnic disparities in PSSA performance and attendance rates in Philadelphia public schools. Plaintiffs insist that, as a result of those disparities, charter schools like MSA that serve student populations that are more than 85% Black or Hispanic[3] are less likely to meet the Academic Success Domain benchmarks and thus more likely to have additional academic conditions in their renewal charters or be closed. In response to this contention, SDP asserts that Plaintiffs' statistics related to PSSA performance and attendance do not control for economic disadvantage (which is considered in the compilation of SSGs) or other variables that could account for the disparities Plaintiffs identified.

 **\*2**  Pursuant to the 2018 Charter, the CSO conducted an Annual Charter Evaluation – Renewal ("ACE-R") to evaluate MSA's performance under the Framework for the 2021-2022 school year and reported that MSA did not meet the standards set in the Academic Success Domain as compared to its SSG. Thereafter, SDP found that MSA did not meet the 2018 Charter's academic conditions, invoked the Surrender Clause,

MEMPHIS STREET ACADEMY CHARTER SCHOOL AT..., Not Reported in Fed....

2026 WL 934190

and demanded that MSA close by June 30, 2023.[4] MSA has not surrendered its charter and continues to operate.

B

Plaintiffs brought four claims against SDP, seeking (1) injunctive relief prohibiting racially discriminatory treatment of MSA and its students under Title VI, and Article I, Section 29 of the Pennsylvania Constitution (Count I), (2) injunctive and declaratory relief holding the Surrender Clause unenforceable (Count II), (3) injunctive and declaratory relief holding that SDP's use of the Framework is racially discriminatory under Title VI and Article I, Section 29 of the Pennsylvania Constitution (Count III), and (4) injunctive relief enjoining violation of the Education Clause of the Pennsylvania Constitution (Count IV).

The District Court granted SDP's motion to dismiss as to Counts II and IV but permitted Counts I and III to proceed. As to Count II, the District Court concluded that MSA failed to adequately plead that the Surrender Clause was unenforceable because the Surrender Clause (1) had not lapsed before it was invoked, (2) did not violate the Charter School Law (the "CSL"), 24 P.S. §§ 17-1701-A et seq., which explicitly contemplates that charter may be surrendered by agreement, 24 P.S. § 17-1729-A(i), and (3) was voluntarily entered. Memphis St. Acad. Charter Sch. at J.P. Jones v. Sch. Dist. of Phila., No. CV 22-02760, 2023 WL 4032660, at *3-4 (E.D. Pa. June 15, 2023). As to Count IV, it held that Plaintiffs had not stated a claim under the Education Clause because "Plaintiffs have not pled that MSA's closure will deprive its students of the free public education system to which they are entitled under the Education Clause." Id. at *5.

SDP thereafter filed an answer, which included a counterclaim for a declaratory judgment to enforce the Surrender Clause, which MSA answered with a litany of affirmative defenses. The District Court granted SDP summary judgment on Counts I and III and its counterclaim, concluding that (1) the Surrender clause is valid and properly invoked, (2) Plaintiffs did not adequately develop their affirmative defenses in their summary judgment briefing, so the Court need not consider them, (3) Plaintiffs failed to proffer sufficient evidence on which a factfinder could conclude that SDP acted with racially discriminatory intent, and thus Plaintiffs' claims under Title VI fail, and (4) the claims under Article I, Section 29 of the Pennsylvania Constitution similarly fail because they must be analyzed

under the same analytical framework as the federal Equal Protection Clause. Memphis St. Acad. Charter Sch. at J.P. Jones v. Sch. Dist. of Phila., No. CV 22-02760, 2025 WL 1933958, at *12, *14, *19-23, (E.D. Pa. July 14, 2025). The District Court denied Plaintiffs' motion to reconsider its summary judgment order. Memphis St. Acad. Charter Sch. at J.P. Jones v. Sch. Dist. of Phila., No. CV 22-02760, 2025 WL 2618770, at *6 (E.D. Pa. Sept. 10, 2025).

**\*3** Plaintiffs appealed.

II[5]

We first consider the District Court's order granting SDP's motion to dismiss Plaintiffs' Education Clause claim. Under the Education Clause, "[t]he General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. art. III, § 14. Pennsylvania courts have repeatedly emphasized that the Education Clause: (1) "imposes a constitutional duty upon the legislature to provide for the maintenance of a thorough and efficient system of public schools throughout the Commonwealth," Lisa H. v. State Bd. of Ed., 447 A.2d 669, 673 (Pa. Commw. Ct. 1982) (emphases omitted); Zager v. Chester Cmty. Charter Sch., 934 A.2d 1227, 1231 (Pa. 2007) ("Article III § 14 of the Pennsylvania Constitution requires the General Assembly to provide public education to serve the needs of the Commonwealth."), and (2) "was never intended to mean, in any conceivable sense, that tort liability should be imposed upon a school district." Auerbach v. Council Rock Sch. Dist., 459 A.2d 1376, 1378 (Pa. Commw. Ct. 1983); see also Mullen v. Thompson, 155 F. Supp. 2d 448, 453 (W.D. Pa. 2001) (explaining that school district's decision to close eight schools did not implicate the Education Clause, which does not provide a right to "education at the school of [plaintiffs'] choice"), aff'd, 31 F. App'x 77 (3d Cir. 2002) (not precedential); Save Our Saltsburg Schs. v. River Valley Sch. Dist., 285 A.3d 692, 697 (Pa. Commw. Ct. 2022) (favorably citing Mullen). Because Plaintiffs' allegations do not implicate the General Assembly's provision of a free public education system, the District Court correctly granted SDP's motion to dismiss Plaintiffs' Education Clause claim.[6]

III[7]

MEMPHIS STREET ACADEMY CHARTER SCHOOL AT..., Not Reported in Fed....

2026 WL 934190

**\*4** The District Court also properly granted SDP summary judgment on Plaintiffs' discrimination claims under Title VI and Article I, Section 29 of the Pennsylvania Constitution related to the Surrender Clause (Count I), the adoption and application of the Framework (Count III), and its counterclaim to enforce the Surrender Clause.

A

The prohibitions against discrimination under the Equal Protection Clause and Title VI "are coextensive."[8] Doe ex rel. Doe v. Lower Merion Sch. Dist., 665 F.3d 524, 541 (3d Cir. 2011). Prevailing on a discrimination claim under either provision requires "[p]roof of racially discriminatory intent or purpose." Antonelli v. New Jersey, 419 F.3d 267, 274 (3d Cir. 2005) (quoting City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 194 (2003)); see also Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 272 (3d Cir. 2014). "Intentional discrimination can be shown when [as relevant here,] a facially neutral law or policy that is applied evenhandedly is motivated by discriminatory intent and has a racially discriminatory impact." Antonelli, 419 F.3d at 274 (citations omitted). "Racially discriminatory purpose means that the decisionmaker adopted the challenged action at least partially because the action would benefit or burden an identifiable group." Doe, 665 F.3d at 548. However, "mere awareness or consideration of race should not be mistaken for racially discriminatory intent or for proof of an equal protection violation." Id. In other words, " '[e]ven conscious awareness on the part of the [decisionmaker] that the [policy] will have a racially disparate impact does not invalidate an otherwise valid law, so long as that awareness played no causal role' in the adoption of the policy." Id. at 552 (quoting United States v. Frazier, 981 F.2d 92, 95 (3d Cir. 1992) (per curiam)) (first alteration in original).

Here, Plaintiffs argue that the SDP's adoption of the Framework and its reliance thereon to enforce the Surrender Clause were motivated by discriminatory intent because SDP knew that its actions would disproportionately impact charter schools predominately serving Black and Hispanic students. Even assuming Plaintiffs' evidence showed disparate impact and that SDP knew about it, there is no evidence in the record showing that awareness of that impact played a causal role in the adoption of the Framework, which applies evenhandedly to all Philadelphia charter schools, or in the enforcement of the Surrender Clause.[9] The stipulated facts reveal that (1) the Framework was adopted for the race-neutral purposes of annually monitoring and evaluating charter school performance, and (2) the Surrender Clause was triggered for the race-neutral reason that MSA did not satisfy the academic conditions for renewal. Because the record does not show that SDP was motivated by knowledge of potential disparate impact, and because the stipulated facts indicate that SDP took both challenged actions for race-neutral reasons, Plaintiffs' Title VI claims fail. Doe, 664 F.3d at 552 (concluding that policy was not motivated by discriminatory impact because the school district "plausibly explained any such impact on a neutral ground"); Blunt, 767 F.3d at 301 (concluding that "statistical evidence that [Black] students were overrepresented in special education classes" was insufficient to show a genuine issue of material fact that the school district engaged in intentional discrimination).[10]

B

**\*5** Plaintiffs' claim under Article I, Section 29 of the Pennsylvania Constitution also fails. Section 29 provides: "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the race or ethnicity of the individual." Pa. Const. art. I, § 29. This provision "has yet to be authoritatively interpreted by Pennsylvania courts."[11] Conf. of Presidents of Major Italian Am. Orgs., Inc. v. City of Phila., 344 A.3d 64, 77 n.21 (Pa. Commw. Ct. 2025), reconsideration and reargument denied (Sept. 25, 2025).[12]

Plaintiffs, without citing legal authority or considering the text of the provision, argue that the Pennsylvania Constitution must be interpreted to provide for greater protections than Title VI and the federal Equal Protection Clause and that it protects against disparate impact without discriminatory intent. The plain language of the provision undercuts this argument. The provision guarantees that no person should be deprived of its protection "because of the race or ethnicity of the individual." In similar contexts, the phrase "because of" has been interpreted as requiring that the illegal action occurred on account of or due to a protected characteristic. See Allegheny Reprod. Health Ctr. v. Pa. Dep't of Hum. Servs., 309 A.3d 808, 868 (Pa. 2024) (explaining that "because of" means "on account of" in interpreting another provision of the Pennsylvania constitution); see also Bostock v. Clayton Cnty., Georgia, 590 U.S. 644, 656 (2020) ("[T]he ordinary meaning of 'because of' is 'by reason of' or 'on account of.' "); Safeco Ins. Co. of Am. v. Burr, 551 U.S.

47, 63-64, & n.14, (2007) (noting that "because of" means "based on" and that " 'based on' indicates a but-for causal relationship"); Cmty. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 184 (3d Cir. 2005) (concluding that "because of" language in Fair Housing Act Amendments required showing of "facial[ ] discriminat[ion] or discriminatory animus"). Thus, under the language, a violation of the provision cannot be proven by simply showing impact. Rather, the claimant must show that the actor acted because of the protected trait. Thus, Plaintiffs' argument that disparate impact alone is sufficient to prove a violation of Section 29 lacks basis.

Because proof of discriminatory intent is required to prove a claim under Section 29—just as it would be under the Equal Protection Clause and Title VI—and the record here lacks such evidence, the District Court properly granted summary judgment to SDP.[13]

C

 **\*6** Plaintiffs also maintain that the District Court, in granting SDP summary judgment on its counterclaim for injunctive relief to enforce the Surrender Clause, did not adequately consider the following affirmative defenses: (1) that SDP's execution of the 2018 Charter violated the CSL, 24 P.S. §§ 17-1701-A et seq., (2) that the 2018 Charter's force majeure clause prohibited invocation of the Surrender Clause**,** and (3) that the "academic conditions" referenced in the Surrender Clause were too ambiguous for the clause to be enforced.

Although Plaintiffs raised these affirmative defenses in their answer, they did not develop arguments related to the CSL or the force majeure clause in their summary judgment briefing before the District Court. "[G]rounds not relied on at summary judgment are abandoned," Pizarro v. Home Depot, Inc., 111 F.4th 1165, 1182 (11th Cir. 2024), and "cannot be resurrected on appeal," Higgins v. New Balance Athletic

Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999). See also DLJ Mortg. Cap., Inc. v. Stevens, 167 F.4th 632, 635 (3d Cir. 2026). Because Plaintiffs abandoned those affirmative defenses by failing to develop them, the District Court did not err by declining to consider them. Given our view concerning other issues in this case that are arguably implicated by these forfeited defenses, this is not a case where we would forgive the forfeiture and address these otherwise unpreserved arguments.[14]

Plaintiffs did discuss the ambiguity defense in their summary judgement briefing, arguing that it was ambiguous whether the Surrender Clause's reference to "academic targets" included student attendance rates. The defense nonetheless fails because the Surrender Clause may be invoked if "any of the academic targets" had not been met by the deadline, App. 3210-11, and the record shows that MSA was not in compliance with the 2018 Charter conditions related to student performance on the PSSA. Because there is no dispute that conditions related to student performance on the PSSA were among the "academic targets" that could trigger the Surrender Clause, any purported ambiguity regarding whether student attendance rates were also "academic targets" is immaterial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (explaining dispute is "material" only if it might affect the outcome of a case). Thus, the District Court's order granting summary judgment to SDP on Plaintiffs' request for injunctive relief against the Surrender Clause was proper.

IV

For the foregoing reasons, we will affirm.

**All Citations**

Not Reported in Fed. Rptr., 2026 WL 934190

Footnotes

\*  This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

1  Because MSA is a brick-and-mortar charter school, SDP, as the local school board, is responsible for granting, renewing, nonrenewing, and revoking the charter. 24 P.S. § 17-1717-A.

2  MSA agreed with SDP that the academic conditions were attainable.

MEMPHIS STREET ACADEMY CHARTER SCHOOL AT..., Not Reported in Fed....

2026 WL 934190

MSA's student population has always consisted of approximately 86-90% Black and Hispanic students. During the 2021-2022 school year, approximately 71% of the students served by SDP were Black or Hispanic.

Although SDP did not cite MSA's failure to meet the standards set in the Academic Success Domain under the Framework during the 2021-2022 school year in its decision to invoke the Surrender Clause, Plaintiffs assert that MSA's ACE-R ratings influenced the decision.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of a district court's order granting a motion to dismiss for failure to state a claim, Burch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011), and review the complaint to determine whether, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (internal quotation mark omitted), it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). A claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014) (internal quotation mark omitted).

We will deny Plaintiffs' motion to certify the question of whether a local school district can violate the Education Clause by adopting or implementing policies like the ones at issue here because "[c]ertifying a question where the answer is clear is inappropriate and unnecessary." United States v. Defreitas, 29 F.4th 135, 141 (3d Cir. 2022).

Our review of a district court's order granting summary judgment is plenary, Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013), and we view the facts and make all reasonable inferences in the non-movant's favor, Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Title VI of the Civil Rights Act provides that '[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.' " Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 271 (3d Cir. 2014) (quoting 42 U.S.C. § 2000d) (alteration in original).

We need not consider Plaintiffs' arguments that the District Court improperly ignored evidence that the ACE-R ratings influenced SDP's invocation of the Surrender Clause because SDP's lack of discriminatory intent is dispositive.

"[D]eliberate indifference" can also demonstrate intentional discrimination where "evidence ... shows both: (1) knowledge that a federally protected right is substantially likely to be violated ..., and (2) failure to act despite that knowledge." S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 265 (3d Cir. 2013) (emphases omitted). Violation of a federal right in this context—a challenge to a facially neutral policy with disparate impacts—requires evidence of discriminatory intent. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 567-68 (3d Cir. 2002) ("[A] decisionmaker will not commit purposeful discrimination if it adopts a facially neutral policy 'in spite of' its impact, not 'because of' that impact." (quoting Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979))); Blunt, 767 F.3d at 273 (collecting cases explaining that a school district's deliberate indifference to "teacher or peer harassment" or "a racially hostile environment" violated Title VI); S.H., 729 F.3d at 264 n.24 (explaining that "the mere fact of disparate impact is insufficient to sustain a Title VI challenge to a facially neutral policy"). Because Plaintiffs have not presented facts on which a reasonable factfinder could find that SDP had discriminatory intent, they have not presented facts supporting that SDP had knowledge that a federally protected right was substantially likely to be violated by the challenged action.

We recently held that Section 29 claims are analyzed under the same framework as Title VI and the Equal Protection Clause. Sargent v. Sch. Dist. of Phila., 165 F.4th 727, 739 n.6 (3d Cir. 2026).

It is immaterial here that the Pennsylvania Supreme Court has interpreted Article I, Section 28 of the Pennsylvania Constitution, which provides that "[e]quality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual," to be more protective than the federal Equal Protection Clause. Allegheny Reprod. Health Ctr. v. Pa. Dep't of Hum. Servs., 309 A.3d 808, 889 (Pa. 2024). The Pennsylvania Supreme Court determined that Section 28 requires that laws that make distinctions based on sex must survive strict scrutiny, rather than intermediate scrutiny, but did not opine on whether a showing of disparate impact without discriminatory intent was sufficient to establish a violation of Section 28. Id. at 889-90.

We will deny Plaintiffs' request to certify the questions related to the interpretation of Section 29 because "[c]ertifying a question where the answer is clear is inappropriate and unnecessary." Defreitas, 29 F.4th at 141.

We will deny Plaintiffs' motion to certify the question of whether the CSL permits the charter school authorizer in a school district to enter an agreement that would materially alter the original charter developed pursuant to 24 P.S. § 17-1720-A because Plaintiffs forfeited this issue by failing to develop it in their summary judgment briefing, and "an immaterial question should not be certified." Defreitas, 29 F.4th at 141.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.